Senior Judge Goodwin, Judge Tashima, Judge Clifton, I am Thomas Okano, representing the appellants Ronald Zimmerman and Steffi Zimmerman. Your Honors, this case has been before this Court once before, and that was on the District Court's dismissal of the appellant's complaint. This Court ordered, found that the District Court was incorrect in its dismissal of the case because the existence of a post-deprivation remedy did not preclude the appellants from seeking review of their alleged due process violations. In my argument this morning, I would like to reserve 15 minutes for a rebuttal opportunity, but I'd like to make three major points to begin with, and that is the District Court clearly applied the standard of review to summary judgment motions incorrectly, and that is the District Court construed the available evidence and all possible inferences against the non-moving party, the appellants. Secondly, the District Court was in error in granting summary judgment because there were material issues of fact with regard to Sergeant Leonard White's role in tagging up the bus that was ultimately seized by the city. And secondly, Sergeant Leonard White's role at the hearing that was provided under the municipal ordinance. Appellants claimed that there was a violation of their due process rights also as regards to the notices that were provided by the city of their intent to first tag the bus and seize it, and then notice of their intention to abate the bus. And it's the appellant's viewpoint that this Court's decision in Schneider v. County of San Diego is, of course, applicable to the situation with regard to appellant's due process claims. In that case, this Court examined whether or not the notices that were provided to the Mr. Schneider did in fact meet due process requirements, and the Court concluded it did not. And that is because the notices did not inform Mr. Schneider that his property would be destroyed if it were not, if he didn't make the corrections and remove his, I think there were some vehicles parked on the property that did not allow storage of vehicles. The, this Court found that as Mr. Schneider's vehicle was not either wrecked, abandoned, dismantled, or inoperative, that the County of San Diego had no authority to destroy the vehicle. That's the same situation in this case, Your Honors. First of all, with regard to the notice issue, the city of Oakland's unregistered vehicles, Judge Chesney determined in the case of Wheeler v. City of Oakland that the city of Oakland's abatement law or ordinance only regulates vehicles which are wrecked, dismantled, inoperative, meaning mechanically inoperative or abandoned. It does not regulate vehicles which are not registered. In fact, the California Vehicle Code does not make it illegal to store vehicles on privately owned property. So therefore, the notices that were given to the appellants with regard to the transit bus were defective, fatally defective at the outset. That is, the notices portend to regulate unregistered vehicles when in fact they do not. And that falls in line with the Schneider v. County of San Diego case, wherein there's misinformation given to the person who must react to the notice. And under Mullane v. Hanover Bank, the notice doesn't meet the standard which is required for giving the party who must react adequate information. I'd like to turn first now to the argument that the district court committed error, and it's the standard of review with regard to summary judgment motions. The district court found that there is no evidence that Sergeant Leonard White, the hearing officer, was involved with the tagging of the transit bus on March the 3rd, 1998. The available evidence shows that Mr. White was in fact one of the police officers who was on the Zimmerman property on March the 3rd, that he was the senior police officer in charge of the entourage that went there to tag vehicles. The city offered no evidence whatsoever that Sergeant Leonard White was on the appellant's property for any other reason but as chief of the vehicle abatement unit. And as chief of the vehicle abatement unit, when the transit bus was tagged for abatement, it had to be presumed that that tagging occurred with his authority and with his approval. So the district court committed error in construing the evidence saying that there is no proof by plaintiffs that, in fact, the police officer who ultimately heard the appeal in this case had anything to do with the initial tagging. Under the Withrow v. Larkin U.S. Supreme Court decision What do you mean when you say had anything to do? Isn't the issue whether that officer issued the tag or not? There was a tag issued by an officer under his direct supervision and control, Your Honor. And that was Did the evidence show that White ordered the tagging? Or that he was just there? The evidence shows that White was there. The evidence shows that he was the senior member of the police delegation. The evidence shows that he was chief of the vehicle abatement unit. Any tag issued had to come from the vehicle abatement unit. It also shows that the there was no other reason for officer for Sergeant Leonard White to be on the premises other than to supervise the tagging of the of the vehicles that were on the Zimmerman property. So in considering that this is on summary judgment, he was there to conduct a hearing. There was no hearing being conducted that day, Your Honor. Maybe, you know, he was he wanted to be ready for the hearing in case there was one. No, Your Honor, there no no request for a hearing had been made. So therefore, it couldn't be in anticipation of a hearing. It only could have been with regard to the tagging operation that occurred on March 3rd, which then led to a request for a hearing by the appellants. And again, the city defendants offered no evidence that he was there for any other reason than to supervise the tagging of the vehicles that were on that property. The second issue goes to the condition of the bus. And that is, again, the zoning on storage of vehicles. It also allows for free parking facilities. It also allows repair of vehicles. In fact, there were several automotive repair shops located on that property. Mr. Zimmerman's bus was stored there on because the Jim Hines Foundation was located and had its offices on that property. So therefore, there's an exemption under the city vehicle abatement ordinance, which allows vehicles to be stored on property not otherwise zoned to allow for storage of vehicles where the vehicle is stored there in relationship to the operation of a legitimate business, which was the Jim Hines Foundation. The the evidence is was in conflict as to whether or not there is no I'm sorry, there is no conflict in the evidence as to whether or not the bus was abandoned. It was not abandoned. It was not wrecked and it was not dismantled. The question then was whether or not it was operable. There was their declaration submitted and opposition to the summary judgment motion, which showed a substantial investment in the bus, that it had new tires, that it did operate, that it was driven around the property to make sure that it operated correctly, that the only the only condition that the hearing officer found to be remiss was it was missing a headlight, it appeared to be missing a bumper, and it appeared not to have current registration. On the basis of those facts, there is no way that the court could conclude that the bus was inoperable. In fact, the hearing officer never made a finding. The hearing officer never found that the bus was either dismantled, inoperative, abandoned, or wrecked. And under the Schneider v. County of San Diego case, in the absence of such finding, the city was without authority to seize the bus and to destroy it, which it ultimately did. The third point I'd like to make is that there was no bar to amendment of the complaint to bring in the towing defendants in this case. This case was before this court for approximately two years before the district court's judgment and order were reversed in part with regard to due process claims. Prior to filing the motion to dismiss, the appellants had no opportunity to conduct discovery in this case. When the case was returned to the district court, appellants moved to amend their complaint to bring in, in substitute for tow defendants, the towing defendants. And the issue was, under California law, whether or not the motion to amend was timely under CCP section 474. The question being, did the appellants know both the identity of the towing defendants when they filed the original complaint, and did they know the facts giving rise to the cause of action against them? There was no persuasive or clear evidence presented by the towing defendants to establish otherwise. During the court has granted an order. What do you mean? Didn't the plaintiff testify that he knew at the time it happened who towed his car? He knew the identity of the towing company. He didn't know the causes of action. And he knew what the towing company did. He knew the identity of the towing company, but the evidence referred to by the towing defendants was, Mr. Zimmerman said, I'll sue you. And Mr. Zimmerman said, you know, you people are taking my property in violation of the ordinance. The court recently granted, issued an order allowing the videotape of the hearing to be introduced as evidence in this appeal. If the court carefully reviews the hearing tape, you'll see that Mr. Zimmerman's remarks are directed to the city. He kept saying to Sergeant Leonard White, I will sue you. You know, you people are taking this, you don't know what you're doing, you're taking my property against the law. But he knew all that at the time his car was towed and he knew who did it. He didn't know the relationship between the towing defendants. Their name painted on the door of the tow truck. But when he said I'll, in his deposition, he said, I'll sue you. It was ambiguous as to who he meant, the driver of the truck? What difference does it make what he said about who he was going to sue? He's suing the tow company now. Because at the time. What fact did he learn since then that he didn't know that? He sued the towing defendants as members of the Oakland Tow Car Association. He did not know that the the in this case, the towing defendants were brought in as members or subcontractors to the Oakland Tow Car Association. And their roles as contractors to the city were not discovered until this case was returned to the. You know, the tow car was doing it the direction of the city. He didn't know. How can you not know? He did not know the relationship between. You have to know the relationship. You just know. You know that if a policeman standing there and somebody's towing your car because a policeman says to you, you know it's doing that the direction of the city. There's a question of fact, Your Honor. Again, that goes back to summary judgment. That's not a reasonable question. Well, it. That's preposterous. It goes to the issue of. Anybody who's standing there, if your car is being towed and a policeman is standing there, no one will say, well, I didn't know. Well, they were working for the police. That's a ridiculous claim to make. Prior to, Your Honor, prior to the initiation of the contract with the OTCA, you know, anybody could have could have towed the vehicle. But he was suing here on the on the relationship, the validity of the OTCA contract with the city of Oakland and the ability of these subcontractors to take his vehicle, that that was the argument. And there was no evidence presented by the towing defendants that that appellants knew of this relationship at the time that they filed their original complaint. All right. The claim against the towing company was something other than essentially the claim against the city. You don't have the right to take the. Yes. They're basically what we were arguing was that the towing defendants had liability by virtue of being city contractors, which we did not know prior to that. Well, you're predicting they're for towing the bus? You knew they were acting at the command of the city. So if it's the fact that they have an arrangement with the city, it's hard not to know  Is there something else there? No. Why is the detail of this tow car association make any difference at all? Well, they were the exclusive agent for the city. Why? And so while we were the appellants were trying to we're arguing that the tow car association had no authority to take the vehicle because it didn't have a valid license to operate within the city. If all of these people are acting as contractors and members of the Oakland Tow Car Association and it was invalid, the contract with the city was invalid. Then they had no authority whatsoever to take the vehicle. The policeman hired him to go take the vehicle. But the complaint has to be construed in terms of how why it was that the individual towing defendants were brought into the case. And that was because You can't throw common sense out the window. How much money do you want to reserve for rebuttal? Fifteen, Your Honor. You've only got seven left.  I'd like to reserve it then.  There are two defendants here with you. You can split it any way you want to, but you have a total time of 20 minutes. Morning, Your Honors. I am George King. I represent the towing defendants. Before we start, I think it's important to clear up certain matters that really relate to the Rule 11 motion that was taken up before the district court. We contend the same conduct is available here. Number one, with respect to the Heinz Foundation, the court found they hadn't paid their corporate tax and they're not in good standing today, and yet they continue with this appeal of the corporate tax. Number two, in appellant's brief, he says that the Zimmermans are in the process of registering the bus, and that's a complete misrepresentation. And if I direct you to page 6, 10, 15, it's clear that they've never attempted to register the bus. In fact, Mr. Zimmerman testified that they weren't going to extort me and I wasn't going to register the bus and I wasn't going to pay the taxes. Number three. Is non-registration a legitimate basis for acting under the ordinance? If you don't own the vehicle, I don't see how you can sue the city for something that you don't own. Well, is it the law that non-registration equals not ownership? Yes, that would be our position. Well, who is the owner? The owner still, as far as Sacramento is concerned, is AC Transit, who sold it to a Sacramento outfit, and the only evidence in the record was a one handwritten note. I think the plaintiff makes the point. I'm not too sure of this, but I think the plaintiff makes the point that, you know, you can have ownership outside of the system of registration of the vehicle code. Is that true? Isn't that true? I don't believe that's true. And I think we've cited the vehicle code sections in our brief. And the purpose of that, of course, is for the state to collect taxes and registration fees and things like that. But the state doesn't collect taxes if the vehicle is not on the road, right? Well, if it's not. And this was not on the road. So can't you transfer ownership of a vehicle that's not on the road without going through the DMV registration system? No, Your Honor. Number one, I don't believe that's true. Number two, one of the contentions. I don't believe that. I mean, I'm interested in legal authority. Okay. I think we've cited the vehicle code sections as when a vehicle is transferred. The vehicle code doesn't say that's the exclusive means, does it? And I contend that those sections would exclude. My question is the vehicle code doesn't say that that's the exclusive means of transferring title, does it? I think that is correct. I think there's some insurance cases that deal with that. Suppose you've got a NASCAR stock car brought into California for the California 500. Unlikely to have California tags. You're telling me nobody owns that car and I can go lay claim to it? Well, if it's registered in Oklahoma. I don't think I've seen a license plate on any NASCAR vehicle. Well. And it's not going to be driven on the public streets. Well, then we're saying that the position goes to the doctrine of unclean hands if you're evading taxes and things like that by not registering the vehicle. You don't have to pay taxes unless you drive it on the public highway. In this case, one of the contentions of the plaintiff is that the Jim Hines Foundation was using this vehicle to go to Modesto to take kids. There was no evidence of any insurance and there was no evidence of any registration. I think that's the distinction. Well, it's the city's position that this was an inoperable motor vehicle. Right. So it could have been driven to Modesto. Well, I don't think it could, if I agree with you, Your Honor. So more important, as far as the towing defendants are concerned, the case cited by the appellants, the Geichmann versus Rubin Motors at 682 Federal Second, says the remedy, since Mr. Zimmerman testified, I knew who Billy Taylor was. I knew the vehicle had been taken to A&B Motors. I wasn't going to be extorted for any money from them, from their thefts. The Geichmann case says that the remedy is you pay for whatever is due in owing and then you sue to get damages. And that's cited by the appellant, the Geichmann case, along with the Strykman case. Number three, with respect to the Rule 11 motion, the appellant says on page 18 that we didn't comply with the safe harbor provisions. But if you look at the Rule 11 motion, the letter is not only giving him the notice required by Rule 11. There's a reply to the letter that I wrote him. Number four, he sued Billy Taylor individually. And the district court says that there would be no individual liability. One error I think here is they are contending that during the period between the appeal with this court, where the district court had given the appellant the opportunity to file in the state court, which they apparently didn't do, that the statute of limitations was stayed. I don't believe that's the law. I think that the law basically says if the defendant doesn't know and if the defendant is prejudiced, that there would be no stay. And I see no authority where the action should have been stayed by the district court. Obviously, the district court found that there was knowledge. In fact, there was extensive knowledge in a motion that appellant made to the district court for an extension of time. He told Judge Sparrow that he had handled a case, and he filed an affidavit with that court saying that he had handled the case for a person named McClintock, who sued the towing operator, a person named Bob Berry, who was part of the Oakland Tow Car Association. So they were quite aware of the Oakland Tow Car Association. Now, I raised issues as far as jurisdiction on appeal is concerned, and I would say that the appellant is probably correct that Rule 4 was amended in 1993. But I suggest to this court that if a motion is made under Rule 59, and the original appellate decision covered Rule 59 in this case, and then he just decides to unilaterally withdraw that motion, does he get the benefit of a stay? His motion did nothing but mirror the fact that he was unhappy with the district court's opinion. I suggest to the court that he was aware of the issue on Rule 59 from his former appeal and the decision by this court, and therefore, he should not get the benefit of a stay and decide when he wants to withdraw a motion that shouldn't have been filed to begin with. I think that covered my presentation. All right. Good morning, and may it please the Court. Christopher T., appearing for Defendant, City of Oakland, and Sergeant Leonard White. There are two issues I'd like to raise with the Court today, the first being that there are threshold issues that we would submit completely preclude the plaintiff's due process claims, and then secondly, that even if one looks at the due process claims in all their specifics, that they are insufficient to rise to the level of a constitutional violation. As we were preparing this to appear today, I was brought to mind of a literary passage, of all things, wherein the narrator at the beginning of a long journey finds himself in a dark wood and tells us that the straight way was lost. And I believe that this is a case where it's very easy to be caught up in the details and the facts and lose sight of what is the ultimate issue in this case, which is were the plaintiffs given sufficient notice and were they given a meaningful opportunity to be heard. In that regard, as Matthews instructs us, all that is necessary is that the procedures be tailored in light of the decision to be made to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case. The city defendants would respectively submit that the record here shows beyond dispute that plaintiffs were given a meaningful opportunity to present their case and that they simply squandered it. They were not denied due process so much as they declined due process. Let me ask you about the registration issue for a second. Yes. And I'll connect it up with what you're saying now. Is it the case that failure to have current registration is not an acceptable or legitimate basis for the city to seize and tow the vehicle? There are two points on that, Your Honor. The city, well, first of all, in this specific instance, Sergeant White viewed the lack of registration as evidence of abandonment, that if the vehicle was not registered and given the other facts that were extant here, that the bus would not start, that the bus had been sitting in a place for some time, that he viewed that as the hearing officer as evidence of abandonment, and he testified to that in his deposition. But I think more to the point, the city of Oakland, as a charter city, is entitled to declare what constitutes a nuisance. And in this particular setting, they have said unregistered vehicles that are not moved inside will be considered a nuisance. This point was actually raised in the 1999 motion to dismiss, and Judge Wilkin implicitly ruled this appears in the Appellee's supplemental excerpts of record at page 10. In footnote 2, they talk about the definition of nuisances as possibly being in conflict with the definition in state law. And the point that had been raised was that, well, unregistered vehicles are not considered a nuisance under state law, and so therefore if the city declared unregistered vehicles as being a nuisance, then they would therefore be in conflict with the state law. The court said, Judge Wilkin said, no, that's not the case, that because of the remedy that's available for them, which is to put them inside, then there's not a conflict. That was not raised on the initial appeal of this case, and so we would view that the issue as far as this case is now is waived. Let me explain why I raise it there. If nonregistration by itself isn't justification, if it takes the long way around by saying it is evidence of abandonment which may qualify as nuisance, you can have a vehicle that doesn't have current tags on it that's not sitting in a field with grass growing through it. You can have a brand-new Mercedes sitting in somebody's driveway that doesn't have current license plates, and I don't think anybody would automatically assume that that Mercedes sitting in the driveway is visual blight or is a nuisance. I believe the city's position in that hypothetical would be that were that vehicle to sit unmoved for an unreasonable period of time, that unless it were covered in some way, that it could indeed constitute a nuisance because it's a vehicle that has not been moved. In the specifics of this case, though, the issue of the registration came up in the context of notice. It's plain disposition that a notice that said unregistered vehicles that are not enclosed may be abated as a nuisance. The notice also said that dismantled, inoperative, abandoned, and wrecked vehicles were subject to abatement as well. The record is clear here that the bus, which is the subject of this lawsuit, that three of the four without question applied. It was indeed dismantled. The testimony is that the brake lines had been dismantled. That's part of the administrative record of this case. The evidence of that appears at the Appellee's supplemental excerpts of record at 133 to 136 and 160. It was clearly inoperable. Again, the citation to the record is the same, 133 to 136, and also 190 to 194. It was to the mind of the hearing officer was abandoned in that it would not start and it hadn't been moved for at least six weeks and that there was no registration, which I understand is a concern to Your Honor. So as a matter of notice, the issue of registration, which is how this issue comes up in this appeal, I don't know that it really has a bearing one way or the other because on the face of the document that the plaintiffs received, it's very clear that they had a reasonable notion of what they were being charged with. The bus could be abated if it was in that litany of criteria. Does that answer the Court's question? It generally does. I sat and I watched the videotape the other day, and I guess the concern comes from and I think the sergeant was sincerely trying to do his job. It did seem a little unclear to me exactly what his job was. One of the fundamental allegations being made by the plaintiff is that he's wearing two hats and he can't wear two hats. And I sat there and watched it, and the second hat may not have been on his head, but it was in his back pocket at some point. He's trying to enforce the law as a police officer. He's trying to supervise identification of vehicles at the same time he's the adjudicator. And so he looks at the bus, and one of the first things he notes, he notes it out loud, no registration. And so I'm trying to figure out, well, how does that fit into his decision-making? What exactly is he out there doing? Well, two responses to that. The administrative record consists of more than simply the videotape. There are the computer logs that PST Hayman entered, and there's the abatement log itself, and the notes on that refer to items in addition to simply the lack of registration. And those are the items that I mentioned before, that the brakes were evidently dismantled and that the bus would not start, which is also evident on the videotape itself. So there are alternative grounds for abating the bus that appear on the face of the notice of abatement beyond the registration. So, again, the registration is not, for purposes of notice and for purposes of due process, I don't know is necessarily a dispositive point. With respect to the wearing of two hats, there are no questions that the hearing that is at issue here is a pre-deprivation hearing. The bus was not towed until after that hearing took place. This Court has held in the context of an employment termination where the city defendants would contend that the potential deprivation is considerably more severe than the bus that we're talking about here. The Court has held that failure to provide an impartial decision-maker at the pre-deprivation stage of itself does not create liability so long as the decision-maker at the post-deprivation hearing is impartial. The citation there is Walker v. City of Berkeley, 951 F. Second 182, 184, 1991. It appears in our brief at page 31, and I would note that it's a decision of Judge Goodwin's. Here, there was a post-termination, post-deprivation hearing available. It was before the city council. The citation for that is our excerpt of record at page 228. And then there was an additional right of judicial review under California Code of Civil Procedure 1094.6. Plaintiffs did not avail themselves of those post-deprivation remedies. There's no evidence of, and even if they had, there's no evidence, no suggestion even, of bias on the part of the post-deprivation decision-makers. So under Ninth Circuit law, the fact that there may have been the possibility that Sergeant Wright was wearing two hats, which we would suggest and emphasize, that there's no evidence in the record that the potential wearing of two hats manifested itself in any sort of overt bias at the hearing itself. As the videotape demonstrates, he was scrupulously fair in the presence of a very difficult and truculent plaintiff, to put it mildly. So if I can return to my initial point with respect to the failure to avail themselves of the process that was due, once again, this court provides guidance to the straight way, as it were, in the Reed v. Eigen case. This court stated that a petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. That's precisely what is being contended here. There is the discussion that, well, maybe there was a dead man's switch on the engine, or maybe there were airbags that could have been inflated that would have meant that the bus would not have appeared as if it was so low to the ground and had flat tires and would have been abandoned. Even the more interesting issue, perhaps, of Sergeant Wright's potential bias, as well as the issues of notice, all of these could have and should have been raised at the administrative level, and they were not. There was no evidence entered into the record at all with respect to those kinds of concerns. And then there was, as I've mentioned before, no appeal of those as well. So under the Eigen case, it seems impossible that plaintiffs can contend that they were deprived of due process based on these very discreet, distinct concerns and issues that were within the scope of the agency's authority to review and then to come before this Court and say, well, our rights of due process were violated. That having been said, I'd like to just briefly address some of the specific concerns that were raised in Appellant's opening remarks with respect to the Schneider case. Schneider is distinguishable from this case in that what occurred there is that an administrative panel, if my recollection is correct, found that the plaintiff was in violation of a different ordinance than the one that he had been initially charged with and that there was a remedy, a penalty that was imposed on the – that was – that had fallen under the initial – the initial code section rather than the one that he was eventually found liable under. So that the Court concluded that, well, there was no notice that he might be subject to this penalty because he was not actually liable under the code section that he was eventually found guilty under, if that makes sense. That's obviously not the situation here. The situation here is it's been the prosecution or the nuisance abatement action has continued from beginning to end under the authority of the same code section. So there's not that problem of penalties that aren't applicable to the – to the initial ordinance. The only other point I believe I've – I had the – there was a question of the unregistered vehicles as an element of the notice. As I've noted earlier that the notice clearly applied to disabled, inoperative, and dismantled vehicles as well. And the record shows here that the bus was fairly – the ordinance clearly applied for those – under those criteria. All right. You're two and a half minutes over your time. Thank you very much. Okay. Thank you, Your Honor. All right. Rebuttal. Your Honor, I would like to address the argument regarding the notice again. And that is there was no evidence before the district court that Sergeant Wright considered the bus to be abandoned. The term abandoned in the city's ordinance means abandoned. It does not mean – looks like it doesn't have a proper owner or looks like it was not driven and therefore it's abandoned. That argument was never made to the district court below. The review of the videotape shows that there was no testimony taken at the hearing. The review of the videotape shows there were two and a half minutes spent basically circling the bus by the hearing officer. There were no sworn witnesses. There was no questioning of the appellant, nor was it given an – was the appellant given an opportunity to speak. Sergeant Wright merely circled the bus. He looked at a car parked next to it and said, if this had been on the street, we would take it. And then he turned to the bus and said, take this. That's all he did. There was no opportunity to refute anything he said. How come you didn't pursue your post-deprivation hearing rights? We did request a hearing, Your Honor, and that's a matter of record. I, as attorney for appellants, requested a hearing before the city council through the deputy – through the assistant city attorney, Charles Vose, and correspondence sent to him. And the – my client, Mr. Zimmerman, appeared before the city council to – Elihu Harris was then mayor and requested a hearing before the city council on the abatement of the bus. And Mayor Harris said, worked it out with the city attorney's office. I then, when I began representing the appellant, requested a hearing with regard to the abatement, and it was denied by Charles Vose, and that's part of the record on this appeal. That was the last step? That was the last step, Your Honor. You didn't take the 1094.5 or 1094.6 administrative writ? We elected, Your Honor, to proceed in federal district court, and a district court cannot review a 1094.5 writ of mandate proceeding. With regard to the – again, the argument that in a pre-deprivation hearing, there is no due process violation if there might be bias or conflicting roles on the part of a hearing officer, I think that's absolutely absurd. In this case, it was clear that Sergeant White was performing dual roles at the hearing. First of all, he was acting as police officer. Secondly, a person in charge of the vehicle abatement unit, because the bulk of the hearing was devoted to tagging other vehicles and taking vehicles that were not within the scope of this administrative hearing. What's your response to the city's argument? You know, the case he cited, Mr. Key, that – the city of Berkeley case, that it's okay for the pre-deprivation hearing officer not to be unbiased if the post-deprivation hearing body is unbiased. I think that that rule of law would be unfortunate, Your Honor. I don't think that is the rule of law. I think the rule of law is that a person at a pre-termination hearing must be unbiased as well. I think that the district court pointed out in footnote 7 of her opinion that had the plaintiffs given evidence that Sergeant White was indeed involved in the tagging of the bus, and involved is a term very loosely used, then Withrow v. Larkin, the Supreme Court's president, would be applicable to this case, not the city of Berkeley case. And it would be that the person who had anything to do with the initial decision to take or the decision which would be on review then would be – would be incumbent upon the hearing process to provide a person who was a neutral trier of fact. And in this case, there was no neutral trier of fact. And I think that the hearing tape, although it is flawed, because the hearing lasted one hour and a half. If you review the hearing tape, it says it's approximately 1.30 p.m. Mr. Vo's comments at the end of the tape, it is 3 p.m. He had to go to another meeting. The tape is only one hour long. And the appellants had argued in the district court that this tape could not be authenticated as evidence of this proceeding, although it does show that Sergeant White was biased, that he made arbitrary rulings with regard to, for example, the BMW vehicle, which he allowed to be returned after it had been abated, but he refused to allow the Zimmerman bus to be returned because he said, I know. I was there on March the 3rd when it was tagged, and I was familiar with the bus. That's at, I think, counter 59.41 of the videotape, where he admits that he was there. He admits that he had something to do with the tagging of the bus. I think that very admission precludes him from having been the hearing officer in this case, and I think that violates the Supreme Court's precedent in Withrow v. Larkin, and therefore the summary judgment granted by the district court in this case must be reversed on the hearing procedures and on the notice procedures. Again, I'd like to emphasize that there was never any finding regarding the condition of the bus. The information regarding the brake lines was provided by a PST hangman who was there to record the vehicles that were taken, which shows bias. Basically, he was there. His sole role was to record the vehicles that were going to be seized on Cullen's property. So you had a police service technician recording information that was used by the city of Oakland to prove that the bus was, in fact, inoperable, when, in fact, it is not. I mean, the declaration of Jim Montano on this point was entirely disregarded by the district court, and it shouldn't have been, because at least it provided conflicting issues regarding a material issue of fact, conflicting facts regarding a material issue on which precluded summary judgment. The other point I would like to make is under the California Vehicle Code, it is not inappropriate to store a vehicle which is unregistered, and that's Vehicle Code section 4000A, 4000A, 4000B, Your Honor. And in that section, it says, notwithstanding the requirements for registration, any privately owned person may store. I said this subdivision does not apply to any motor vehicle stored in a privately owned off-street parking facility by or with the express permission of the owner of the privately owned off-street parking facility. Clearly, under the zoning M-20 that the city of Oakland had on this property, Mr. Zimmerman could store his transit bus on that property without registration. And going back to the city's ordinance, the city's ordinance, as interpreted by Judge Chesney in the case of Wheeler v. City of Oakland, and we're talking about the same ordinance that was before this Court, was interpreted not to regulate lack of registration. So since the primary reason why it appears the primary reason why Sergeant White took the bus was because it appeared not to have registration, is invalid. And under this Court's precedent in Schneider v. County of San Diego, the city had no authority to take that bus, and there was no finding to support the taking. And the notices under the city's ordinance violated appellants' due process rights. Thank you. All right. Thank you. Thank all counsel in this case for the argument. This case is now submitted for decision.
judges: Goodwin, Tashima, Clifton